FLYNN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 20, 1896.)

STREET RAILROADS—INJURY TO CHILD ON TRACK.
   A boy seven years old attempted to cross a track immediately in front of a horse car. The driver promptly turned the horses off the track, but the dashboard knocked the boy down, and he was killed by a passing cart. *Held,* that negligence could not be inferred from the driver's failure to apply the brake instantaneously with the primary duty to save the child from the horses. Williams and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.
   Action by Michael Flynn, as administrator, against the Metropolitan Street-Railway Company. The complaint was dismissed, and plaintiff appeals. Affirmed.

   The action is for damages resulting from the death of James Flynn, a child between seven and eight years of age. The child was bright and intelligent. He was sent from his home on the 31st of May, 1895, on an errand which required him to go to a store on the east side of Tenth avenue, between Fortieth and Forty-First streets. Returning from his errand, the boy attempted to cross Tenth avenue from east to west at Fortieth street, and at or near the north cross walk. A Belt Line car, going south, passed in front of him. One of the defendants' cars (a green car) was following on down the avenue, about 20 feet behind the Belt Line car. On the other side of the Belt Line car, and 4 or 5 feet west of the railroad track, was

a cart loaded with stone, and being driven up the avenue, towards the north. The boy went on the track (in his effort to cross) behind the Belt Line car, and a few feet in front of the horses of the defendants' car. He was going quickly. The driver of the car swung his horses to the left, and thus avoided a collision between the boy and the horses. But the dashboard of the car—the side of the car nearest the west side of the avenue—struck the boy and knocked him down. He fell in front of the neighboring cart, which passed over his body and killed him. The driver of the car had one hand upon the brake when, with the other, he was swinging his horses to the left, but he did not at the same instant turn the brake or stop the car. He devoted himself at the moment exclusively to turning the horses to the left, and this was necessary to save the child from being struck by the horses. The complaint was dismissed, and the plaintiff appeals.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Frederick H. Man, for appellant.
Brownson Ker and John F. Tittle, for respondent.

BARRETT, J. The question in this case is whether the driver of the car was guilty of negligence; that is, whether there was anything to go to the jury on that head. Upon the question of contributory negligence, we think the case might have gone to the jury. It cannot be said, as matter of law, that the child failed to exercise that degree of care which might reasonably have been expected of him. As to the main question, to wit, the driver's alleged negligence, the claim is that he made no effort to stop the car; that, while he was turning his horses to the left with one hand, he did not at the same time apply the brake with the other hand. It is clear that if the driver had applied the brake, and had not turned his horses to one side, the child would have been run over. The situation was critical, and the danger imminent. The horses were almost upon the child. There was the primary and immediate danger. What the situation imperatively demanded was that the driver should lend his energies to the swerving of the horses. He met that claim upon him with promptness and vigor. But it is said that he should have done more; that in the midst of the excitement, and on the spur of the moment, he should have perceived the possibility of a later danger, and provided against it. There was no evidence tending to show that a driver, under such circumstances, could swerve his horses swiftly with one hand, and at the same moment adequately apply the brake with the other. Assuming, however, that the jury might have inferred that this was feasible, still the appellant's contention would extend the rule of negligence into impossible channels. What was required of the driver was the reasonable care and diligence of a person endowed with ordinary capacity, and fairly equipped for the particular service in question. What the appellant calls for is, not ordinary care and prudence, but extraordinary capacity and foresight. The driver should, in this view, possess a mind capable of thinking coolly and deliberately, yet promptly, in the midst of excitement and danger. And this great and unusual power should be coupled with the physical capacity to perform simultaneously two distinct functions, each of which, but for this capacity, might

well require the use of both hands. What is that but saying that unless a man possesses the highest attributes of mind and body, and exercises these attributes in the highest degree, a jury is authorized to find him guilty of negligence. We cannot concur in this extreme view. Negligence could not have been just ly inferred from the conceded facts of this case. The utmost that could have been inferred was an error of judgment, namely, the possibility that the child might have been saved by the union of thought and action upon the double function. The rule is that, where there is so little evidence of negligence that no reasonable man could find from it the fact of negligence, a nonsuit should be directed. "Negligence," as was said in Sutton v. Railroad Co., 66 N. Y. 243, "is ordinarily a question for the jury, but only when the facts would authorize a jury to infer it." We think negligence could not here have been inferred from the failure to apply the brake instantaneously with the performance of the primary and imminent duty. That duty was at all hazards to swerve the horses and save the child. The imminence of the immediate danger from the horses overshadowed all else. It was concentration upon the one crucial object which constituted care and prudence. The danger lay in diversion or deviation. It is said, however, that the jury might have found that the driver could have applied the brake and slowed down before the horses' heads came so near the boy, and that, if this had been done, the accident might have been avoided with or without the sudden swerving of the horses' heads. The difficulty with this position is that there was not a particle of evidence upon which the jury could have made such a finding, or have drawn such an inference. Indeed, there was but one witness—Thomas G. Kennedy—who said that the boy was as much as six feet in front of the horses when he went upon the west track, and that witness merely "guessed" at the distance. This is his testimony:

"I guess the car was about six or eight feet from him at the time he started to cross. The horses were going at the usual gait,—something like six miles an hour. Q. And with the horses going at the usual gait, six miles an hour, this boy starts in, six or eight feet in front, to cross over, and the driver, to prevent the horses from running him down, had to swerve them to one side? A. To one side. The side of the car nearest the west side of the avenue hit him."

All the other witnesses called by the plaintiff put the distance at but between two and three feet. Mary McAuliffe says:

"I would put it between two or three feet in front. It was so near that the driver had to swerve the horses' heads so that they would not hit him."

William J. Hickey says that it was about the width of the car's platform, which the foreman of the jury said was a couple of inches over two feet. Hickey then testified as follows:

"The boy goes in front of the horses about two feet two inches from their heads, although this stone cart is coming along on the opposite side, right close to the track,—pretty close to the track. Q. And the horses miss him, because the driver swerves them to the east, but the dashboard strikes him and knocks him down under the cart? A. Yes, sir."

The last witness of all, Thomas Tregoning, made this still clearer. He testified as follows:

"The boy went so near in front of the horses' heads that the driver, to prevent the horses' heads from hitting him, had to swerve the horses to the east, and that brought him away from the brake, which is on the right,—on the west. Q. So that he couldn't attend to both at the same time, and he took the horses, instead of the brake, as the quickest way to prevent the accident. That is the way it looked, didn't it? A. Yes, sir."

This was substantially all the testimony upon the subject. Surely, from that testimony no jury could possibly have found or inferred that the use of the brake alone might have saved the boy. This testimony also accentuates the extreme difficulty of the situation, and shows must conclusively that the swerving of the horses was the urgent requirement of the moment. The driver's act in doing what he did must indeed have been almost involuntary. It was the one thing which any driver possessed of the least presence of mind would have done. Had the driver attempted to do more, and failed, there would have been greater plausibility in attributing such failure to his negligence than there is in the present charge. For then it might with some show of reason be asserted that, with the child almost under his horses' heads, the driver should have concentrated his efforts upon the one function which the imminence of the danger called into immediate and exclusive play.

We think, therefore, that the complaint was properly dismissed, and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J. (dissenting). The action was brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The order dismissing the complaint was made at the close of the plaintiff's evidence, no evidence having been given on the part of the defendant. In passing upon the correctness of this order, we are required to give the plaintiff the benefit of the most favorable finding of facts which the jury would have been justified in making from the evidence. Having this rule in view, the facts were as follows: The deceased was a bright, intelligent boy, seven years and eight months old, and lived with his parents on Fortieth street, west of Tenth avenue, New York City. He was sent by his mother, at 4:45 p. m., on an errand which required him to go to a store on the east side of Tenth avenue, between Fortieth and Forty-First streets. After doing the errand the boy started to return to his home. There were two street-car tracks lying substantially in the center of Tenth avenue. The boy attempted to cross Tenth avenue from east to west, near the northerly cross walk, at Fortieth street. The pavement on the easterly side of the track in Tenth avenue was torn up and being repaired, so that teams were obliged to pass along the avenue on the westerly side of the tracks. As the boy approached the tracks, a Belt Line car, so called, was passing along towards the south on the westerly track, and about 20 feet behind it was the defendant's car, also going south on the same track. On the westerly side of the Belt Line car, and 4 or 5 feet from it, was

a cart loaded with stone, and being driven northerly along Tenth avenue. The boy crossed the easterly track, and went upon the westerly track behind the Belt Line car, and about 6 feet in front of the horses drawing the defendant's car. He was walking quickly, but not running. The car was going about 6 miles an hour. The driver had the lines in one hand, and his other hand on the brake. He did not apply the brake or slow down the car at all, but swung his horses towards the east, to avoid their striking the boy. The car passed along, and the dashboard struck the boy, who was then just at the west side of the track, and threw him to the ground, under the cart loaded with stone, which was then near by; and before the boy could get away the wheel of the cart passed over him, causing his death.

Upon these facts, there would seem to be no doubt but that the questions of the negligence of the defendant, and the absence of contributory negligence of the deceased, were for the jury, and not for the court. The boy was clearly of sufficient age and intelligence to be chargeable with his own negligence, but he was a boy of tender years, and not a mature man. It is well settled that a boy of his age would not be chargeable with the same degree of care as a mature man would be. Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712. And we think the age of the boy must also be considered, in determining the degree of care to be exercised by the driver of the car which would relieve the defendant from the charge of negligence. It was the duty of the driver to exercise such degree of care as was commensurate with the danger to be apprehended, and clearly more danger was to be apprehended, by reason of the tender age of the boy, than if he had been a mature man. The jury would have been justified in finding that the driver was negligent, under the circumstances, in not applying the brake and slowing down the car; that he saw the boy, and was in a position to see all the danger surrounding him, and especially the presence of the cart loaded with stone, moving northerly, and before it passed the Belt Line car, so as to be visible to the boy; that these dangers were visible to him in time to have enabled him to apply the brake, slow down his car, and so avoid any accident; that it was his duty to do this; that he could do it; that he neglected to do it, and was therefore guilty of negligence. The jury would have been justified in finding that the boy was free from contributory negligence in attempting to cross the avenue and the tracks of the street railroad at the time and place he did; that, when he started to cross the tracks, there was apparently a clear way, and a reasonable opportunity to cross safely, at least in the judgment of a boy of his tender years; that there was an open space of 20 feet between the two cars, and that the cart loaded with stone was hidden from his view behind the Belt Line car; that when he was part way across the track his passage was cut off by the loaded cart, and though he had actually crossed over the west track, in front of the horses, he believed it better to stop and let the cart pass than attempt to go further, and risk the danger of passing in front of the cart; that he was in a place of danger,

and did the best he could under the circumstances to avoid injury; that he was so in danger by reason of the negligence of the driver in not applying the brake and slowing down the car; and that, under all the circumstances surrounding him, he exercised as much care and caution to avoid accident and injury as a reasonably careful and prudent person of his tender years would have done; and, if the jury found this, then they might well find he was free from contributory negligence.

It is well settled that the rules as to the respective duties of foot passengers and street-railroad companies, as to the crossing of the tracks, are different from the rules applicable to travelers in the highway and steam railroads crossing such highways. In the case of steam railroads the travelers along the highway must, when they see a train approaching, wait for the train to pass, before attempting to cross over; but, in the case of street railroads, foot passengers may cross over, though they see cars coming. They must exercise care in so doing, and the street-car driver must exercise care also. Each must exercise such care as the circumstances of the particular case require, and the want of proper care on the part of either is ordinarily a question of fact for the jury, in view of all the circumstances surrounding them. The jury are to consider the evidence, and to draw the inferences therefrom; and their judgment, and not that of the court, is to be taken as to the question of negligence and contributory negligence. There are cases in which the evidence is such that no inference can be drawn by the jury, other than that in a single direction; and then the court may and should take the case from the jury, and itself determine the facts and direct the verdict and judgment. This, I think, was not such a case. The questions of fact here were for the jury, and the case was improperly taken from their consideration.

It is said that it was impossible for the driver of the car, after he saw the boy crossing the tracks, to apply the brake and slow down the car, and at the same time turn his horses' heads so as to prevent the horses from striking the boy. This was a question of fact for the jury, and not for the court. He held the lines in one hand, and the other hand was upon the brake. He saw, or could have seen, the boy when he started to cross the west track. The boy was then six feet from the horses' heads. He might have acted at once, using one hand in turning the horses and the other in applying the brake. Certainly it was for the jury to determine whether he could or not. The driver was not himself sworn. He did not testify that he could not do this. Until he had spoken upon the subject, the court could not say, as a matter of law, that he could not do this. It was, at most, a matter of inference to be drawn from the circumstances; and the jury, and not the court, were to draw the inference the one way or the other. It is said that some of the witnesses gave their opinions on the subject. Their evidence was in answer to questions formulated by defendant's counsel, he putting the words in their mouths. But, at all events, their opinions were not conclusive; the conclusion was to

be drawn by the jury, and the evidence of the opinions of witnesses could, at most, aid the jury, and did not conclude them as to the determination to which they should arrive. The driver might well have refused to say, when sworn, that he could not have turned the horses' heads and operated the brake at the same time. Until he had been heard on the subject, certainly the question was not one the court could take from the jury and itself determine. Again, it is said that the driver was called upon to act suddenly, and used his best judgment under the exigencies of the occasion, and was not guilty of negligence for an error in judgment as to the best course to adopt. But the court had no power to determine that his action was merely an error in judgment when called upon to act in an emergency. He saw, or should have seen, the boy when, six feet in front of the horses, he went upon the west track. Before the boy had fully passed over the track, the horses' heads had come so close to him that it was necessary to turn their heads to avoid striking him. The jury might find that due care on the driver's part required him to apply the brake and slow down the car as soon as he saw the boy was stepping upon the track. How could the court say that the driver could not have done this before the horses' heads came so near to the boy? Certainly, until the driver had been sworn, and testified that he did not see the boy until his horses' heads were near him,—until he asserted that his action was in accordance with his best judgment under the circumstances,—the court could not take the question of inference from the jury, and say that the driver's failure to apply the brake was an error in judgment under the sudden exigencies of the occasion, and was not the result of his voluntary failure to apply the brake and slow down the car. In any view of the case, the question of the defendant's negligence was one of fact, for the jury, and not of law, for the court.

The judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event.

O'BRIEN, J., concurs.